UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA

| | |
|---|---|
| **JOE SAULS AND LUIS NIEVES-RIVERA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 3:21-cv-00302-SDD-RLB** |
| **COASTAL BRIDGE COMPANY, L.L.C., COASTAL INVESTMENT HOLDINGS L.L.C., KELLY SILLS, AND MIKE GIAMBRONE** | **STATE OF LOUISIANA** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**

Now appears Plaintiffs, **JOE SAULS AND LUIS NIEVES-RIVERA**, through undersigned counsel, who, in Opposition to the Motion to Dismiss filed by Defendants, respectfully shows this Court as follows:

BACKGROUND

Coastal Bridge Company LLC is an industrial construction company based in Baton Rouge. It is, among other things, engaged in the business of repairing bridges and other structures.[1] It is technically owned by Coastal Investment Holdings LLC, which is in turn wholly owned by Kelly Sills. This makes Kelly Sills the de facto sole owner of Coastal Bridge Company. Defendant Mike Giambrone was the CFO of Coastal Bridge Company. Joe Sauls and Luis Nieves-Rivera were employees of Coastal Bridge and insured by Blue Cross Blue Shield through an insurance plan administered and funded by the Defendants. Both Plaintiffs

contributed to the health insurance plan through deductions of partial premiums from their wage checks.

In early December 2019, Joe Sauls began treatment for a rare heart ailment and incurred approximately $150,000.00 in medical expenses for his treatment. As a result of a motorcycle accident in November 2019, Luis Nieves-Rivera sustained severe injuries including the amputation of a leg. Nieves-Rivera's medical expenses for this accident approached $500,000.00. Sometime after the beginning of the 2020 New Year, both men received notices from Blue Cross that their claims were being denied in their entirety. The reason given by Blue Cross was that Coastal Bridge failed to remit policy premiums, including those monies it withheld from its employees, resulting in the cancellation of the company's and its employees' health insurance plan. In September 2020, Plaintiffs requested the Plan documents and various other matters, which the Defendants failed to respond to this written request. Thereafter this Complaint was filed in May 2021.

## LAW AND ARGUMENT

A dismissal under 12(b)(6) is not a preferred avenue of adjudication and is looked upon with disfavor. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied, 459 U.S. 1105, 74 L. Ed. 2d 953, 103 S. Ct. 729 (1983). In considering a 12(b)(6) motion, two predominating principles must be followed. First, all well-pleaded facts in a complaint must be accepted as true, and a complaint should be liberally construed in favor of a plaintiff. *Id.* Second, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.*

---

[1] including the fairly recent repairs to the Sunshine Bridge.

If the complaint alleges enough facts to state a claim to relief that is plausible on its face, a court should deny the defendant's motion. *Id.*

## 12(b)(6) DISMISSAL is PREMATURE

**Plaintiffs may simultaneously sue for both denial of benefits, and breach of fiduciary duty under ERISA.**

Defendants argue in their Motion to Dismiss that the weight of authority in the 5th Circuit bars a beneficiary from suing for breach of fiduciary duty if he has a pending claim for benefits under section 1132(a) (1) (B). However, the application of this doctrine to this claim is currently inappropriate. The Court has ruled in *Bennet v. Louisiana Health Serv. & Indem. Co.*, 450 F.Supp. 3d 686, 692 (M.D. La. 2020), as follows:

> This Court agrees with the more expansive approach taken by many courts, which allows plaintiffs, at this stage of litigation, to simultaneously plead claims under several subsections of Section 502(a). This rule allows Plaintiffs time for discovery, to develop their trial strategy, and to preserve alternative grounds for relief until a later stage in the litigation. Indeed, in the event that Plaintiffs' 502(a)(1)(B) claims prove not to be viable, they should be permitted to rely on their 502(a)(2)&(3) claims as a "safety net, offering appropriate equitable relief for injuries caused by violations that Section 502 does not elsewhere adequately remedy."

Clearly then, at this earliest stage of the litigation the Plaintiffs are allowed to assert both claims for damages and alternatively for equitable relief. For these reasons the Defendants' Motion in this regard should be denied.

**Failure to Exhaust Administrative Remedies**

Similarly, this Court in *Bennett* further stated that:

[D]etermining whether Plaintiffs pled a claim for denial of benefits (the pre-cursor to the exhaustion requirement) is a "more just result than dismissing Plaintiff[s'] complaint." The proper procedure to follow is to require Defendant to plead the failure to exhaust administrative remedies in its answer. Then, in the course of discovery, the parties will discover whether following administrative procedures with the plan administrator would be futile and/or whether administrative procedures were properly followed. Defendant will then have the opportunity to file a motion for summary judgment on the basis of exhaustion. "Plaintiff[s] must be permitted discovery to determine whether exhaustion would be futile."

Failing to exhaust remedies is an argument at the core of Defendants' Motion to Dismiss. Accordingly, as in *Bennett*, this matter is certainly more appropriate for resolution after an Answer is filed, and the parties have an opportunity to conduct discovery on the exhaustion issue. This is especially so when, as here, we are we are dealing with an ERISA plan that collapsed due to complete failure by the Plan Administrators to pay employees' insurance premiums, certainly raising the issue of futility regarding seeking administrative relief prior to filing this suit.

**Prescription**

The Plaintiffs' claims are not prescribed. The Plan itself provides as follows:

Filing Claims

1. All Claims must be filed within ninety (90) days of the date services were rendered, **unless it is not reasonably possible to do so.** In no event may any Claim be filed later than fifteen (15) months from the date services were rendered (emphasis supplied).

The Plan further provides that as to actual filing of a lawsuit that:

No lawsuit related to a claim may be filed any later than twelve (12) months after the claims are required to be filed.

Accordingly, if it was not reasonably possible to file a claim, Plaintiffs had 15 months within which to do so, and then, by the Plans own terms, an additional 12 months to file suit over the claims. There was no reasonably possible way to assert a claim against a defunct Plan. As will be addressed later, the Plan was so poorly mismanaged by the Plan Administrator that the Administrator even failed in its federally mandated duties to provide Plan details, despite written request by Plaintiffs. It can hardly be maintained that a claim could reasonably filed with such a dilatory Plan Administrator that let its employees' health insurance policy lapse. Such a task would have been, to put it mildly, futile. This places Plaintiffs' claims squarely within the appropriate time, i.e., fifteen months plus one year, in which to file suit. Accordingly, the Defendants' prescription argument fails.

Plaintiffs have alleged the Plan was defunct by the fault of the defendants; therefore, there was realistically no Plan to submit a claim to and it was not reasonably possible to do so. Defendants rely on unpersuasive authority to find that benefits claims can be made even after a plan has terminated. Defendant relies on two cases for this proposition. One is a 9th Circuit case- *Sender* v. *Franklin Resources*[2]. In Sender, a beneficiary filed suit against a plan that had terminated **20 years** prior to the suit being filed. And *Gallagher v. Life Insurance Co. of North*

---
[2] N.D.Cal.March 14, 2013 931 F.Supp.2d 959

*America*[3], another 9th Circuit case, involved a plan that had been lawfully "merged out of existence", not one that self-destructed due to the Company pilfering its employee's monthly health insurance premiums. As a result of the factual scenarios being so dramatically different than this case, neither case is persuasive, nor for that matter is the Court bound to follow 9th Circuit precedent.

**Personal Liability of Sills and Giambrone**

The defendants contend neither Kelley Sills nor Giambrone were named as administrators of the Plan, and they should be individually dismissed. To the contrary the complaint for damages does allege they are Administrators. Paragraph Sixteen of the complaint reads:

### XVI.

The Defendants are fiduciaries as defined in ERISA 3(21), 29 U.S.C. § 1002(21), because the Defendants have discretionary authority and/or discretionary responsibility in the administration of the Plan.

In the alternative, should the court consider the Defendants' argument has merit, Plaintiffs pray for leave to amend the complaint to more fully allege that Sills and Giambrone were Administrators of the Plan. Plaintiffs further pray for leave to amend to add the Plan itself.

**502 (c)(1) statutory claim**

Furthermore, defendants have failed to address the Plaintiffs' 502 (c)(1) statutory claim for failure to provide requested information and documentation. ERISA § 502(c)(1) mandates that "any administrator" who "fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary" shall be, in the court's discretion, liable to the participant or beneficiary in the amount up to $110 a

---

[3] N.D.Cal.March 19, 2008 Not Reported in F.Supp.2d

day from the date of such failure or refusal. As stated in paragraphs 11 and 12 of Plaintiffs' complaint, such information was requested in September 2020, and the Plan Administrator never responded, much less provided the mandatory information. This failure by the Plan Administrator(s) entitles Plaintiff to statutory damages.

## CONCLUSION

**WHEREFORE**, Plaintiffs pray that the Court deny Defendants' Rule 12(B)(6) Motion to Dismiss, and in the alternative further request leave to amend their Complaint as appropriate.

**RESPECTFULLY SUBMITTED:**

*/s/ Gregory J. Miller*
Gregory J. Miller (#17059)
MILLER, HAMPTON & HILGENDORF
3960 Government Street
Baton Rouge, LA 70806
Telephone: (225) 343-2205
Facsimile: (225) 343-2870
Email: gjm@mlhlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed with the Clerk of Court via the CM/ECF system which will send notice to all CM/ECF participants.

Baton Rouge, Louisiana, this 10th day of August 2021.

*/s/ Gregory J. Miller*
Gregory J. Miller

Respectfully Submitted:
*s/Gregory J. Miller*
Gregory J. Miller No. 17059
**MILLER, HAMPTON & HILGENDORF**
3960 Government Street
Baton Rouge, LA 70806
Telephone:   (225) 343-2205
Facsimile:    (225) 343-2870
Email:         gjm@mlhlaw.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that the above pleading was electronically filed with the Clerk of Court for the United States District Court, Middle District of Louisiana, and that a copy of the same is being served upon all counsel of record by automatic operation of the Court's ECF/ECM filing system.

      Baton Rouge, Louisiana this day of March 2019.

                                                      /s/Gregory J. Miller
                                                    Gregory J. Miller