## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOE SAULS and LUIS
NIEVES-RIVERA

VERSUS

COASTAL BRIDGE COMPANY, LLC,
COASTAL INVESTMENT HOLDINGS,
LLC, KELLY SILLS and MIKE
GIAMBRONE

CIVIL ACTION

21-302-SDD-SDJ

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendants, Coastal Bridge Company, LLC ("Coastal Bridge"); Coastal Investment Holdings, LLC ("Coastal Investment"); Kelly Sills ("Sills"), and Mike Giambrone ("Giambrone")(collectively, "Defendants"). Plaintiffs, Joe Sauls ("Sauls") and Luis Nieves-Rivera ("Nieves-Rivera")(collectively, "Plaintiffs") filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] For the reasons that follow, the Court finds that the *Motion to Dismiss* shall be GRANTED.

I.    **Factual Background**

Coastal Bridge is a Baton Rouge, Louisiana-based industrial construction company in the business of, among other things, repairing bridges and other structures.[4] Joe Sauls and Luis Nieves-Rivera both worked for Coastal Bridge – Sauls in accounts payable, and Nieves-Rivera as an operator.[5] Both men were covered by a group health

---

[1] Rec. Doc. No. 13.
[2] Rec. Doc. No. 15.
[3] Rec. Doc. No. 17.
[4] Rec. Doc. No. 15, p. 1.
[5] Rec. Doc. No. 1, p. 2.

insurance plan ("the Plan"), for which Coastal Bridge withheld money from their paychecks to fund a portion of the premiums owed.[6] Plaintiffs allege that, during their employment with Coastal Bridge, they incurred medical expenses that would have been paid for in whole or in part by the Plan. On November 2, 2019, Nieves-Rivera had a motorcycle accident, suffering a broken hand, broken ankle, ligament damage and, ultimately, an amputated leg. Nieves-Rivera incurred medical expenses in excess of $480,000 in connection with the accident. On December 5, 2019, Sauls underwent a heart procedure, incurring medical expenses in excess of $125,000.[7] Plaintiffs allege that "several months later," they received a letter from Blue Cross Blue Shield ("BCBS"), the claims processor for the Plan, "purporting to retroactively cancel [the Plan]; thereby denying payment of [their] incurred medical expenses."[8] Plaintiffs do not allege that they made a claim or that their claim was denied; they allege that the letter from BCBS had the effect of "denying payment of [their] incurred medical expenses."[9]

On May 24, 2021, Plaintiffs filed this ERISA suit to secure the benefits that they contend are due under the Plan. Defendants' *Motion to Dismiss* raises several arguments, but, after reviewing the *Complaint*, the parties' briefs, and the applicable law, the Court concludes that one of them – regarding the timeliness of Plaintiffs' suit -- is dispositive.

**II.    Law and Analysis**

    a.  Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-

---

[6] *Id*. at p. 3.
[7] *Id*. at p. 5.
[8] *Id*.
[9] Rec. Doc. No. 1, p. 5.

pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[10] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[11] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[12]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[13] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[14] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[16] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[17] "[O]n a motion to dismiss,

---

[10] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[11] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equity, Inc.*, 540 F. 3d 333. 338 (5th Cir. 2008).
[12] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[15] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).
[16] *Id.*
[17] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[18]

### b. The Plan's Provisions

This action arises out of the Employee Retirement Income Security Act of 1974 ("ERISA").[19] The United States Supreme Court has held that it is permissible for ERISA plans to contain reasonable provisions that limit the time for bringing an action based on the plan.[20] The Plan at issue in this case contains several such provisions.[21] First, the Plan provides that:

> All claims must be filed within ninety (90) days of the date services were rendered, unless it is not reasonably possible to do so. In no event may any Claim be filed later than fifteen (15) months from the date services were rendered.[22]

The Plan also provides that "[n]o lawsuit related to a Claim may be filed any later than twelve (12) months after the Claims are required to be filed."[23]

### c. Analysis

Defendants apply this contractual scheme to Plaintiffs' case and argue that their claims are "time-barred pursuant to the clear language of the Plan."[24] As to Plaintiff Sauls, Defendants note that he underwent a heart procedure on December 5, 2019, and had

---

[18] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[19] 29 U.S.C. § 1001 *et seq*.
[20] *See Heimeshoff v. Hartford Life & Accident Insurance Co.,* 134 S. Ct. 604, 610-16 (2013)("a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable").
[21] Defendants attach copies of the relevant Plan documents as exhibits to their *Motion to Dismiss*. The Court will consider these documents as part of the pleadings, though they go beyond the four corners of the Complaint, because the documents are referred to in the *Complaint* and central to Plaintiffs' claims to recover benefits under the Plan. (See *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004)("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").
[22] Rec. Doc. No. 13-2, p. 83.
[23] *Id*. at p. 84.
[24] Rec. Doc. No. 13-1, p. 6.

ninety days, or until March 4, 2020, to file his claim. Twelve months from that date, or March 4, 2021, would be the last possible date to bring suit pursuant to the terms of the Plan. The suit was actually filed on May 24, 2021, roughly three months after the deadline that Defendants argue is applicable. Similarly, as to Plaintiff Nieves-Rivera, Defendants contend that his claims were required to be made by January 31, 2020, ninety days after his November 2, 2019 motorcycle accident. Then, he had until February 2, 2021 to file his lawsuit. Since Nieves-Rivera waited until May 24, 2021 to file, Defendants insist that his claims are time-barred.

Plaintiffs' *Opposition* to the timeliness argument relies upon the Plan's provision that "[a]ll claims must be filed within ninety (90) days of the date services were rendered, *unless it is not reasonably possible to do so*."[25] Because "[t]here was no reasonably possible way to assert a claim against a defunct Plan,"[26] they argue, the ninety day period does not apply. Instead, they contend that they were bound to file their claims within fifteen months, pursuant to the Plan's specification that "[i]n no event may any Claim be filed later than fifteen (15) months from the date services were rendered."[27] Here, the Court turns to the task of unpacking Plaintiffs' assertion that "[t]here was no reasonably possible way to assert a claim against a defunct Plan."

As an initial matter, Plaintiffs' *Complaint* does not contain factual allegations to support their argument for the fifteen month time period insofar as the *Complaint* does not allege that Plaintiffs made, attempted to make, or contemplated making a claim. Plaintiffs offer the conclusory allegation that pursuing remedies under the Plan would

---

[25] Rec. Doc. No. 13-2, p. 83 (emphasis added).
[26] Rec. Doc. No. 15, p. 5.
[27] *Id*.

have been "futile" because the Plan is "no longer funded and has been canceled."[28] But the *Complaint* does not specify when, exactly, the Plan became defunct. Plaintiffs assert only that they each received a letter "several months"[29] after they incurred medical expenses and that the letter "purport[ed] to retroactively cancel the Blue Cross Blue Shield Insurance Plan."[30] Plaintiffs do not make allegations that explain why, during the several months before they received the letter, it was not reasonably possible to file a claim. Additionally, Plaintiffs' pleading of the time frame as "several months" is ambiguous, and could arguably extend to ninety days, in which case, based on Plaintiffs' own allegation, they had no reason to suspect that it was impossible to file a claim before the requisite ninety-day period had already elapsed.

Plaintiffs also attempt to illustrate the impossibility of filing a claim against the Plan by arguing that "the Plan was so poorly mismanaged by the Plan Administrator that the Plan Administrator even failed in its federally mandated duties to provide Plan details, despite written request by Plaintiffs."[31] This is not the smoking gun that Plaintiffs make it out to be. Even accepting that Plaintiffs never received a response to their request, Plaintiffs assert that they made their written demand for Plan details on September 9, 2020,[32] almost a year after each of them incurred medical expenses. The Plan Administrator's failure to respond to a request for details almost a year later does not tend to prove that it was not reasonably possible to file a claim within the first ninety days.

Likewise, Plaintiffs' contention that it would have been "futile" to file a claim

---

[28] Rec. Doc. No. 1, p. 6.
[29] Rec. Doc. No. 1, p. 5.
[30] *Id*.
[31] Rec. Doc. No. 15, p. 5.
[32] Rec. Doc. No. 1, p. 5.

because they faced "such a dilatory Plan Administrator that let its employees' health insurance policy lapse"[33] is unavailing. Plaintiffs' dissatisfaction with the management of their Plan is not a plausible reason to never have even attempted to file a claim, and the alleged bad behavior of the Plan Administrators does not provide a blanket absolution from the requirement to file a claim within ninety days. The argument that "there was realistically no Plan to submit a claim to"[34] is also unavailing. The Plan provides that "[i]f the Benefit Plan is terminated, the rights of the Plan Participants are limited to expenses incurred before termination."[35] Thus, the alleged termination of the Plan "several months" after Plaintiffs incurred medical expenses did not automatically render it "futile" to file a claim, since the claim would have been for expenses incurred before the Plan's termination.

Overall, it is apparent to the Court that, based on the allegations in the *Complaint*, Plaintiffs were subject to the ninety day period for filing claims. Based on the plain language of the Plan, Plaintiffs were required to bring suit no later than twelve months after those ninety days elapsed. They did not. Although they attempt to demonstrate that it would not have been reasonably possible to comply with that limitation, Plaintiffs fail to articulate facts demonstrating as much. "If the plaintiff's claims are prescribed on the face of the pleadings, the plaintiff has the burden of proving the claims are not prescribed."[36] Accordingly, the Court concludes that their claims against Defendants shall be dismissed as time-barred.

Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend

---

[33] Rec. Doc. No. 15, p. 5.
[34] *Id*.
[35] Rec. Doc. No. 13-2, p. 82.
[36] *Id*.

freely, and the language of this rule evinces a bias in favor of granting leave to amend."[37] However, "[l]eave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend."[38] In addition, the Fifth Circuit has made clear that "[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile."[39] An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion."[40]

The Court will permit Plaintiffs to file an *Amended Complaint* to add allegations, if any, related to why it was not reasonably possible to file a claim within the ninety-day period set forth in the Plan. An important note, however; Defendants' *Motion to Dismiss* raises a number of substantive arguments that the Court did not reach here. Plaintiffs are admonished to take into account those arguments in drafting their *Amended Complaint*, as Defendants will be permitted to re-urge a *Motion to Dismiss*.

### III.    Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss* is GRANTED and Plaintiffs' claims dismissed without prejudice. Plaintiffs are hereby granted leave to file an *Amended Complaint* within 30 days of this *Ruling*.

Signed in Baton Rouge, Louisiana, the 9th of March, 2022.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[37] *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (internal citations and quotations omitted).
[38] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, March 9, 2022 427 F.3d at 994).
[39] *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).
[40] *Id.*