UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOE SAULS and LUIS NIEVES-RIVERA MORRIS

VERSUS

COASTAL BRIDGE COMPANY, L.L.C., COASTAL INVESTMENT HOLDINGS, L.L.C., KELLY SILLS, AND MIKE GIAMBRONE

CIVIL ACTION

21-302-SDD-RLB

## RULING

Before the Court is the *Motion to Dismiss*[1] filed by Defendants Coastal Bridge Company, L.L.C. ("Coastal Bridge"), Coastal Investment Holdings, L.L.C., Kelly Sills, and Mike Giambrone (collectively "Defendants"). Plaintiffs Joe Sauls ("Sauls") and Luis Nieves-Rivera ("Nieves-Rivera") (collectively "Plaintiffs") filed an *Opposition*.[2] Defendants filed a *Reply*,[3] to which Plaintiffs filed a *Sur-reply*.[4] For the following reasons, the Court shall deny the *Motion*.[5]

## I. FACTUAL BACKGROUND

Plaintiffs allege the following facts which, for purposes of this motion, are taken as true. Coastal Bridge is a Baton Rouge based industrial construction company in the business of repairing bridges and other structures.[6] Sauls and Nieves-Rivera both worked

---

[1] Rec. Doc. 32.
[2] Rec. Doc. 37.
[3] Rec. Doc. 38.
[4] Rec. Doc. 45.
[5] Rec. Doc. 32.
[6] Rec. Doc. 27, ¶ 1.

for Coastal Bridge – Sauls in accounts payable, and Nieves-Rivera as an operator.[7] Both men were covered by a group health insurance plan ("the Plan"), for which Coastal Bridge withheld money from their paychecks.[8]

Plaintiffs allege that, during their employment with Coastal Bridge, they incurred medical expenses that should have been paid for in whole or in part by the Plan.[9] On November 2, 2019, Nieves-Rivera had a motorcycle accident, suffering a broken hand, broken ankle, ligament damage, and, ultimately, an amputated leg.[10] He incurred medical expenses in excess of $480,000.[11] On December 5, 2019, Sauls underwent a heart procedure, incurring medical expenses in excess of $125,000.[12] Claims for benefits were made by the health care providers to Blue Cross.[13] Nieves-Rivera received a letter from Blue Cross Blue Shield, the claims processor for the Plan, "purporting to retroactively cancel [the Plan]; thereby denying payment of his incurred medical expenses."[14]

Subsequently, Sauls and Rivera repeatedly asked Coastal Bridge why their benefits were not being paid.[15] They were repeatedly assured by employees and/or agents of Defendants "not to worry[,] . . . that the matter would be taken care of, and their claims/benefits would be paid."[16] Plaintiffs allege that the actions of Defendants "were designed to and did lull them into a false sense of security that there was no need to timely appeal their claims or take legal action."[17]

---

[7] *Id.*, ¶ 3.
[8] *Id.*, ¶ 6.
[9] *Id.*, ¶ 10.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*, ¶ 10.
[14] *Id.*
[15] *Id.*, ¶ 11.
[16] *Id.*
[17] *Id.*

On May 24, 2021, Plaintiffs brought the instant action to recover benefits due under the Plan and to secure other equitable relief as appropriate.[18] Defendants filed their *First Motion to Dismiss for Failure to State a Claim* on July 20, 2021,[19] which the Court granted on March 9, 2022, giving Plaintiffs leave to file an amended complaint within 30 days.[20] Plaintiffs filed their *First Amended Complaint* on April 6, 2022.[21]

In the instant *Motion*, Defendants urge dismissal of the Amended Compalint. Specifically, Defendants claim that (1) Plaintiffs' action is time-barred under the provisions of the Plan, (2) Plaintiffs have failed to exhaust administrative remedies under the Plan, and (3), Plaintiffs may not seek to recover benefits under the Plan while simultaneously pursuing equitable remedies based on breaches of fiduciary duty. The Court addresses these arguments in turn.

## II.    LAW & ANALYSIS

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[22] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[23] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[24]

---

[18] Rec. Doc. 1.
[19] Rec. Doc. 13.
[20] Rec. Doc. 26.
[21] Rec. Doc. 27.
[22] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[23] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equity, Inc.*, 540 F. 3d 333. 338 (5th Cir. 2008).
[24] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[25] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[26] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[28] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[29] "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[30]

A. <u>Plaintiffs' Lawsuit is Timely</u>

In its previous *Ruling*, the Court dismissed Plaintiffs' claims as time-barred because Plaintiffs failed to demonstrate that they had filed their claims within 90 days of the date services were rendered and did not seek judicial review within 1 year of the date the claims were required to be filed, as required by the plan. The parties no longer dispute

---

[25] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[27] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).
[28] *Id.*
[29] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[30] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

the first issue since additional documentation has been submitted which shows that Plaintiffs' claims were filed by their healthcare providers within the 90-day claims period.[31]

The parties still dispute the timeliness of this suit. Defendants argue that Plaintiffs' claims are prescribed on the face of the pleadings because they did not file suit within the 1-year period provided in the Plan. Plaintiffs ask the Court to apply either equitable tolling or ERISA-estoppel. Plaintiffs allege that after contacting Coastal and inquiring into why their benefits were not being paid, they "were repeatedly assured" by Defendants "not to worry[,] . . . that the matter would be taken care of, and their claims/benefits would be paid."[32] Plaintiffs allege that Defendants' actions "were designed to and did lull them into a false sense of security that there was no need to timely appeal their claims or take legal action."[33]

Without considering the applicability of ERISA-estoppel, the Court finds that the instant action is timely. The Court finds that under prevailing Supreme Court and Fifth Circuit law, the Plan's 1-year deadline to bring suit is unreasonably short and is therefore unenforceable.

A participant in an employee benefit plan covered by the Employee Retirement Income Security Act of 1974 (ERISA),[34] may bring a civil action under § 502(a)(1)(B) to recover benefits due under the terms of the plan.[35] The Fifth Circuit requires participants to exhaust the administrative remedies under the plan before filing suit to recover benefits.[36] ERISA does not contain a statute of limitations for claims to recover benefits,

---

[31] Rec. Doc. 36.
[32] Rec. Doc. 27, ¶ 11.
[33] *Id.*
[34] 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*
[35] 29 U.S.C. § 1132(a)(1) (B).
[36] *Swanson v. Hearst Corporation Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir. 2009).

so one may be provided by analogous state law[37] or, as relevant here, by the parties through contract.[38] The Supreme Court has held that a participant and a plan "may agree by contract to a particular limitations period," including a period "that starts to run before the cause of action accrues"—that is, even before the internal process is complete and the claim is denied.[39] The Supreme Court has cautioned that the limitations period must be "reasonable" on its face.[40]

In *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, the Supreme Court considered the facial validity of a 3–year limitations period, which ran from the date that proof of loss was due under the relevant benefits plan.[41] The Supreme Court held that the 3–year limitations provision was not "unreasonably short on its face," relying on representations by the United States Government that "the regulations governing internal review" intend for "'mainstream' claims to be resolved in about one year, leaving the participant with two years to file suit."[42] The Court further noted that, although the administrative review process had taken more time than usual to adjudicate the plaintiff's claim, the plaintiff was left with approximately one year in which to file suit.[43]

In *Baptist Mem'l Hosp--DeSoto Inc. v. Crain Automotive Inc.,* decided before *Heimeshoff*, the Fifth Circuit invalidated a one-year limitations period that ran from the time "a participant merely files a completed claim, potentially long before the claimant's ERISA cause of action even accrues."[44] The Court noted that, "[i]n total, the [plan's] claim

---

[37] *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992).
[38] *Heimeshoff v. Hartford Life & Acc. Ins*. Co., 571 U.S. 99, 105-6 (2013).
[39] *Id.* at 105-6.
[40] *Id.* at 106.
[41] *Id.* at 109.
[42] *Id.* (citations omitted).
[43] *Id.*
[44] 392 F.App'x 288, 294-95 (5th Cir. 2010).

and internal appeal procedures could take as long as 330 days, leaving an unsatisfied claimant with only 35 days to file suit."[45]

Based on *Heimeshoff* and *Crain Auto*, the Court finds that the Plan's 1-year limitations period is "unreasonably short on its face."[46] The period runs from the date the claims are required to be filed, which is at or near the beginning of the internal review process. If the Plan takes "about one year" for "mainstream" claims to be resolved and internally appealed, as the Supreme court observed in *Heimeshoff*, then the Plan leaves claimants, on average, *zero time* to seek judicial review.[47]

The Plan in this case produces just such a result. After an initial claim is denied, the Plan provides for two levels of administrative appeals.[48] First level administrative appeals must be submitted within 180 days of receipt of the initial adverse benefit determination, at which time, the Claims Administrator has 30 days to decide the appeal.[49] Second level administrative appeals must be submitted within 60 days of that decision.[50] The Plan does not specify how much time is allowed to decide initial claims and second level appeals. If Plan administrators take a mere 30 days to act upon an initial claim and another 30 days to decide the second level appeal, claimants are left with only 30 days to seek judicial review—assuming, of course, that there are no delays in adjudicating claims, as is the case here. Even now, it has been over two years since Plaintiffs' claims were filed, and there is no indication that an initial decision has been made.[51]

---

[45] *Id.* at 295.
[46] *See Heimeshoff*, 571 U.S. at 109.
[47] *See id.*
[48] Rec. Doc. No. 13-3, p. 95.
[49] *Id.*, p. 95-6.
[50] *Id.*, p. 96.
[51] "[I]t would be unreasonable to enforce a limitations period that ended before the claim could have even accrued." *Abena v. Metro. Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008).

Ultimately, it seems that the Plan's 1-year limitations period is all but designed to expire close to or concurrently with the accrual of a cause of action, leaving most claimants holding the bag. Because the Plan's limitations period is unreasonable on its face, the Court will not enforce it. The record shows that Plaintiffs have diligently pursued their rights, filing this action within 15 months of their initial claims and within 3 months of the (unenforceable) 1-year deadline.[52] Consequently, the Court declines to enforce the unreasonably short filing period.

B. <u>Parties may Conduct Discovery on Exhaustion of Administrative Remedies</u>

Defendants also argue that dismissal is warranted because Plaintiffs have failed to complete the internal review process provided in the Plan. Plaintiffs counter that they should be allowed to conduct discovery to ascertain whether completing the review process would be futile. Plaintiffs allege that the Plan has been terminated and/or defunded and that their claims have been stonewalled by Defendants, leading them to bring the instant action.

The Court agrees with Plaintiffs that dismissal at this stage would be unjust and premature. A dismissal under rule 12(b)(6) is inappropriate unless the pleadings on their face reveal beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief.[53] The exhaustion requirement is an "affirmative defense."[54] Under Rule 12(b)(6), dismissal on the basis of an affirmative defense is only appropriate if an affirmative defense appears "on the face of the complaint."[55] In such a scenario, "the

---

[52] Rec. Doc. 1.
[53] *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).
[54] *Bennett v. Louisiana Health Service & Indemnity Co.*, 450 F. Supp. 3d 686, 692 (M.D. La. 2020).
[55] *Id.* (quoting *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591 (5th Cir. 1991)).

complaint is said to have a built-in defense and is essentially self-defeating."[56]

Here, Plaintiffs' complaint is not self-defeating. Although Plaintiffs acknowledge that they never received a formal benefits decision from the Plan administrators, courts have routinely held that a plaintiff does not have to exhaust administrative remedies under a relevant plan if doing so would be futile.[57] Plaintiffs allege facts suggesting that Defendants have intentionally delayed issuing a final decision and that completion of the internal review process would be futile because the Plan was allegedly terminated or defunded.[58]

Accordingly, the Court will allow the parties to conduct discovery on the exhaustion issue and "discover whether following administrative procedures with the plan administrator would be futile and/or whether administrative procedures were properly followed."[59] After discovery, Defendants "will then have the opportunity to file a motion for summary judgment on the basis of exhaustion."[60]

C. Plaintiff May Plead Alternate Claims for Monetary and Equitable Relief

Last, Defendants assert that Fifth Circuit precedent prohibits a beneficiary from pursuing equitable remedies under Section 502(a)(2) or 502(a)(3) while simultaneously seeking to recover benefits under Section 502(a)(1).

However, based on this Court's holding in *Bennet v. Louisiana Health Serv. & Indem. Co.*, the Court again finds that dismissal at this stage would be premature:

> This Court agrees with the more expansive approach taken by many courts, which allows plaintiffs, at this stage of litigation, to simultaneously plead

---

[56] CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5B FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed.2004).
[57] *Bourgeois v. Pension Plan for the Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).
[58] Rec. Doc. 27, ¶ 11.
[59] *Bennett*, 450 F. Supp. 3d at 693.
[60] *Id.*

claims under several subsections of Section 502(a).[91] This rule allows Plaintiffs time for discovery, to develop their trial strategy, and to preserve alternative grounds for relief until a later stage in the litigation. Indeed, in the event that Plaintiffs' 502(a)(1)(B) claims prove not to be viable, they should be permitted to rely on their 502(a)(2)&(3) claims as a "safety net, offering appropriate equitable relief for injuries caused by violations that Section 502 does not elsewhere adequately remedy."[61]

The Court will allow Plaintiffs' claims for equitable relief to proceed to the discovery stage, but only with the understanding that Plaintiffs are alleging alternative, rather than simultaneous, theories of liability under § 502(a)(1)(B) for recovery of past benefits and § 502(a)(3) for equitable relief.[62]

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' *Motion to Dismiss*[63] is hereby **DENIED**.

Signed in Baton Rouge, Louisiana, the November 29, 2022.

*Shelly D. Dick*
_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[61] *Id.* at 699.
[62] *See Wisbar v. Health Care Service Corp.*, 2021 WL 4429451, at *6 (M.D. La. 2021) ("[T]he Court cautions Plaintiffs that they must allege alternative, rather than simultaneous, theories of liability under § 502(a)(1)(B) for recovery of past benefits and § 502(a)(3) for equitable relief.").
[63] Rec. Doc. 32.